# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| JULIE VOEKS, DEBBIE LEMKE, and JEFFREY MERKOVICH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>AMERICOLLECT, INC.,<br><br>Defendant. | Case No.: 19-cv-10<br><br>**AMENDED CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. ("WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff Julie Voeks is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff Debbie Lemke is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiff Jeffrey Merkovich is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

6. Each Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes, namely a medical bill.

7. Each Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that Plaintiff allegedly engaged in consumer credit transactions.

8. Defendant Americollect, Inc. ("Americollect") is a corporation with its principal place of business located at 1851 S. Alverno Rd., Manitowoc, WI 54220.

9. Americollect is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10. Americollect is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes. Americollect is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *Facts Related to Plaintiff Voeks*

11. On or about January 13, 2018, Americollect mailed a debt collection letter to Plaintiff Voeks regarding an alleged debt owed to "AURORA HEALTH CARE / AURORA ST LUKES MEDICAL CENTER." A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt listed in Exhibit A was incurred as the result of a transaction for personal medical from Aurora Health Care ("Aurora") in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

2

13. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff Voeks inserted by computer.

14. Upon information and belief, Exhibit A is a form debt collection letter used by Americollect to attempt to collect alleged debts.

15. Upon information and belief, Exhibit A was the first written communication Plaintiff Voeks received from Americollect regarding the alleged debt referenced in Exhibit A.

16. Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires that debt collectors mail to alleged debtors along with, or within five days of, the initial communication:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

17. Exhibit A also includes the following representations:

| CREDITOR NAME | ACCOUNT NUMBER | LAST ACTIVITY DATE | BALANCE |
|---|---|---|---|
| AURORA HEALTH CARE<br>AURORA ST LUKES MEDICAL CENTER | 4081 | 07/28/2017 | $1310.00 |

18. Exhibit A thus demands payment of an alleged debt owed to Aurora in the amount of $1,310.00 associated with an "ACCOUNT NUMBER" ending in 4081 with a "LAST ACTIVITY DATE" of 07/28/2017.

19. A few months prior to the sending of Exhibit A, on or about October 15, 2017, Aurora mailed a "Statement of Hospital and Physician Services" to Plaintiff Voeks. A copy of this statement is attached to this complaint as Exhibit B.

20. Exhibit B lists a "Total Amount Owed" of $1,519.80.

21. Exhibit B further itemizes such "Total Amount Owed" on pages 3-4 of the statement under the header "Detail of Previous Services." Among the services listed are several

services associated with an account number ending in 4081 and a "Date of Service" of "07/28/17 to 08/01/17" with a "Patient Balance" of $1,340.00.

22. Upon information and belief, the difference between the balances listed on Exhibits A & B is the result of a payment tendered by Plaintiff Voeks sometime between October 15, 2017 and January 13, 2018. Exhibits A & B reference the same alleged debt, and the "Patient Balance" listed by Exhibit B has already adjusted the balance for insurance payments.

23. Despite a payment being made between October 15, 2017 and January 13, 2018, Exhibit A lists a "LAST ACTIVITY DATE" of July 28, 2017. Upon information and belief, the "LAST ACTIVITY DATE" listed by Exhibit A actually refers to the date associated with the date of service of the medical services underlying Plaintiff Voeks alleged debt.

24. The unsophisticated consumer would understand the "LAST ACTIVITY DATE" to refer to the date of last payment on the account. *See Gillespie v. Equifax Info. Servs., L.L.C.*, 484 F.3d 938, 939 (7th Cir. 2007).

25. Thus, by listing "LAST ACTIVITY DATE" that is earlier that the a cash payment made on the account, Exhibit A is misleading as to whether or not such payment has been credited to the balance listed by the collection letter.

26. Alternatively, even if Plaintiff Voeks did not tender a payment toward her alleged debt sometime between October 15, 2017 and January 13, 2018, Exhibit A includes plainly false, deceptive, and misleading representations as to the amount of her alleged debt.

27. Plaintiff was misled and confused by Exhibit A.

28. The unsophisticated consumer would be misled and confused by Exhibit A.

29. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

4

### Facts Related to Plaintiff Lemke

30. On or about September 5, 2017, Americollect mailed a debt collection letter to Plaintiff Lemke regarding an alleged debt owed to "EMERGENCY-MEDICINE-SPECIALISTS-SC / ERMED-S.C." A copy of this letter is attached to this complaint as Exhibit C.

31. Upon information and belief, the alleged debt listed in Exhibit B was incurred as the result of a transaction for personal medical in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

32. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff Lemke inserted by computer.

33. Upon information and belief, Exhibit C is a form debt collection letter used by Americollect to attempt to collect alleged debts.

34. Upon information and belief, Exhibit C was the first written communication Plaintiff Lemke received from Americollect regarding the alleged debt referenced in Exhibit B.

35. Exhibit C includes the following representations:

| CREDITOR NAME | ACCOUNT NUMBER | LAST ACTIVITY DATE | BALANCE |
|---|---|---|---|
| EMERGENCY-MEDICINE-SPECIALISTS-SC ERMED-S.C. | ▇6721 | 04/06/2015 | $141.45 |
| | ▇538A | 04/07/2015 | $119.67 |

36. Exhibit C thus demands payment of an alleged debt encompassing multiple accounts, one of which is associated with an "ACCOUNT NUMBER" ending in 538A, a "LAST ACTIVITY DATE" of 04/07/2015 and with a "BALANCE" of $119.67.

37. On or about April 18, 2018, Americollect mailed another debt collection letter to Plaintiff Lemke regarding same alleged debt owed to "EMERGENCY-MEDICINE-SPECIALISTS-SC / ERMED-S.C." A copy of this letter is attached to this complaint as Exhibit D.

38. Upon information and belief, Exhibit D is another form letter, generated by computer, and with the information specific to Plaintiff Lemke inserted by computer.

39. Upon information and belief, Exhibit D is another form debt collection letter used by Americollect to attempt to collect alleged debts.

40. Exhibit D includes the following representations:



| CREDITOR NAME | ACCOUNT NUMBER | ACTIVITY DATE | BALANCE |
|---|---|---|---|
| EMERGENCY-MEDICINE-SPECIALISTS-SC | ▮6721 | 04/06/2015 | $141.▮▮ |
| ERMED-S.C. | ▮538A | 04/07/2015 | $123.▮▮ |

41. Similar to Exhibit C, Exhibit D thus demands payment of an alleged debt encompassing multiple accounts, one of which is associated with an "ACCOUNT NUMBER" ending in 538A, an "ACTIVITY DATE" of 04/07/2015, but with a "BALANCE" of $123.16.

42. Exhibits C & D refer to debts incurred for the same medical services.

43. Between September 5, 2017, when Exhibit C was mailed, and April 18, 2018, when Exhibit D was mailed, however, the debt referenced in Exhibits C & D associated an "ACCOUNT NUMBER" ending in 538A, increased from $119.67 to $123.16.

44. Upon information and belief, the debt referenced in Exhibits C & D is accruing interest at about 4.75% annually.

45. Neither Exhibit C nor Exhibit D states that the alleged debt is accruing interest, and Exhibit D does not itemize the additional interest.

6

46. From the face of Exhibits C & D, the unsophisticated consumer would have no idea that the amount of the alleged debt stated in each letter was subject to change.

47. The unsophisticated consumer would not expect a medical debt to accrue interest, and, on the face of Exhibits C & D, the unsophisticated consumer the unsophisticated consumer would not understand the difference in the amounts stated in the letters to be attributable to interest, late charges, collection fees, or other charges.

48. When the amount of the debt varies day to day, the debt collector should avoid confusion by including explanatory language in the letter. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000) ("As of the date of this letter, you owe $ [the exact amount due]. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number]."); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004).

49. No such explanatory language was used in Exhibits C & D.

50. In *Chuway*, the Seventh Circuit made clear that the debt collector must use the safe harbor language in *Miller* or equivalent language, in cases where the debt collector is attempting to collect the listed balance plus the interest running on it or other charges. 362 F.3d at 949; *see also Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016) (a collection notice violated § 1692e by stating the "current balance" without providing notice that the amount is increasing due to accruing interest or other charges.); *Boucher v. Fin. Sys. of Green Bay*, No. 17-2308, 2018 U.S.

7

App. LEXIS 1094 **12-14 (7th Cir. Jan. 17, 2018) (*Miller*, including its "accuracy requirement," applies to claims brought under 15 U.S.C. § 1692e).

51. A court in this district recently held in a virtually identical scenario that when a debt collector is, in fact, collecting interest, the collector must use the *Miller* safe harbor or equivalent language, or risk misleading and confusing the unsophisticated consumer. *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 210895 at *17-20 (E.D. Wis. Dec. 22, 2017) ("State Collection's letter undeniably does not contain any form of Miller's safe harbor language. Because State Collection's letter failed to inform the Spuhlers that interest was running on the amount owed, I find there is a triable issue of fact as to whether the collection letter is confusing or unclear on its face."); *see also Synder v. Gordon*, 2012 U.S. Dist. LEXIS 120659, at *8-9 (W.D. Wash. Aug. 24, 2012); *Michaelek v. ARS Nat'l Sys., Inc.*, 2011 U.S. Dist. LEXIS 142976, at *4 (M.D. Penn. Dec. 13, 2011); *Dragon v. I.C. Sys.*, 483 F. Supp. 2d 198, 202-03 (D. Conn. 2007); *Lukawski v. Client Servs., Inc.*, 2013 U.S. Dist. LEXIS 124075, at *10-14 (M.D. Penn. Aug. 29, 2013).

52. Americollect's failure to include explanatory safe harbor language in Exhibits C & D is material because the unsophisticated consumer may pay the amount listed on Exhibits C & D, but the payment would not actually resolve the debt. The unsophisticated consumer would have no way of knowing if the debt was resolved because Exhibits C & D fail to explain what amount Americollect is actually collecting.

53. Americollect's failure to include explanatory safe harbor language in Exhibits C & D is also material because whether the account is bearing interest would undoubtedly be a factor in the unsophisticated consumer's prioritization of the debt. *See Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 748 (E.D. Mich. July 12, 2017) ("An inherent danger posed by harassing

8

or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives.") (quoting *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1097 (6th Cir. 2015), *rev'd on other grounds*, *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)); *Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012) ("Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process[.]"). The consumer may prioritize debts that are accruing interest over debts that are not.

54. Further, even if Americollect disclosed that the account was bearing interest in a previous letter, the unsophisticated consumer is not expected to reference documents sent years prior to ameliorate the confusion. *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) ("an unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely"); *see also, Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 *17-20 (E.D. Wis. Oct. 26, 2017) ("*Spuhler I*") (the collection letter at issue in *Spuhler* was not an initial communication); *Lukawski*, 2013 U.S. Dist. LEXIS 124075, at *10, 11 (rejecting an argument that interest had been disclosed in a letter sent six weeks prior to the offending communication) ("the letter in question is deceptive in spite of the prior letter with the interest disclosure. . . . These arguments, requesting that the letters be read together to place notice on Michalek of increasing balances, were made and rejected by the Court.") (citing *Michalek*, 2011 U.S. Dist. LEXIS 142976, at *18-19).

55. Plaintiff Lemke was misled and confused by Exhibits C & D.

56. The unsophisticated consumer would be misled and confused by Exhibits C & D.

57. Plaintiff Lemke had to spend time and money investigating Exhibits C & D, and the consequences of any potential responses to Exhibits C & D.

9

### *Facts Related to Plaintiff Merkovich*

58. On or about February 28, 2018, Americollect mailed a debt collection letter to Plaintiff Merkovich regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit E.

59. Upon information and belief, the alleged debt listed in Exhibit E was incurred as the result of transactions for personal medical in which payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'").

60. Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Plaintiff Merkovich inserted by computer.

61. Upon information and belief, Exhibit E is a form debt collection letter used by Americollect to attempt to collect alleged debts.

62. Exhibit E includes the following representations:

| CREDITOR NAME | ACCOUNT NUMBER | ACTIVITY DATE | BALANCE |
|---|---|---|---|
| OPHTHALMOLOGY ASSOCIATES S C | 246E | 07/14/2014 | $138.10 |
| MIDWEST NEPHROLOGY ASSOC INC | 1883 | 06/07/2013 | $211.09 |
| HORIZON INTERVENTIONAL PAIN PHY SC | 797D | 06/06/2013 | $199.85 |
| HORIZON INTERVENTIONAL PAIN PHY SC | 110L | 02/21/2014 | $161.79 |

63. Exhibit E also includes the following representations:

10

```
NO FEES - IF PAYING BY CREDIT CARD, FILL OUT BELOW.
WE ACCEPT:         ☐ VISA    ☐           ☐ DISCOVER
CARD NUMBER                              EXP. DATE
|_|_|_|_|_|_|_|_|_|_|_|_|_|_|_|_|         /
PLEASE PRINT NAME
SIGNATURE
STATEMENT DATE            ▮▮▮▮0799       AMOUNT DUE
  02/28/18                                 $710.83
SHOW AMOUNT PAID HERE   Pay online at: www.americollectpay.com
                        User ID ▮▮▮  Password: ▮▮▮
PLEASE MAKE CHECKS PAYABLE AND SEND TO:
```

64. <u>Exhibit E</u> thus demands payment of an alleged debt encompassing multiple accounts, the total of which are associated with a file number ending in 0799 with an "AMOUNT DUE" of $710.83.

65. On or about September 18, 2018, Americollect mailed another debt collection letter to Plaintiff Merkovich regarding the same alleged debt owed to "EMERGENCY-MEDICINE-SPECIALISTS-SC / ERMED-S.C." A copy of this letter is attached to this complaint as <u>Exhibit F</u>.

66. Upon information and belief, <u>Exhibit F</u> is another form letter, generated by computer, and with the information specific to Plaintiff Merkovich inserted by computer.

67. Upon information and belief, <u>Exhibit F</u> is another form debt collection letter used by Americollect to attempt to collect alleged debts.

68. <u>Exhibit F</u> includes the following representations:

| CREDITOR NAME | ACCOUNT NUMBER | ACTIVITY DATE | BALANCE |
|---|---|---|---|
| OPHTHALMOLOGY ASSOCIATES S C | ▮▮▮246E | 07/14/2014 | $141.38 |
| MIDWEST NEPHROLOGY ASSOC INC | ▮▮▮1883 | 06/07/2013 | $215.99 |
| HORIZON INTERVENTIONAL PAIN PHY SC | ▮▮▮797D | 06/06/2013 | $204.53 |
| HORIZON INTERVENTIONAL PAIN PHY SC | ▮▮▮10L | 02/21/2014 | $165.66 |

69. <u>Exhibit F</u> includes the following representations:

11

[Payment stub image showing:]

NO FEES - IF PAYING BY CREDIT CARD, FILL OUT BELOW.
WE ACCEPT: VISA, MasterCard, DISCOVER
CARD NUMBER | EXP. DATE
PLEASE PRINT NAME
SIGNATURE
STATEMENT DATE: 09/18/18 | ▓▓▓▓0799 | AMOUNT DUE: $727.56
SHOW AMOUNT PAID HERE | Pay online at: www.americollectpay.com
User ID: ▓▓▓ Password: ▓▓▓
PLEASE MAKE CHECKS PAYABLE AND SEND TO:

70. Similar to Exhibit F, Exhibit E thus demands payment of an alleged debt encompassing multiple accounts, the total of which are associated with a file number ending in 0799 with an "AMOUNT DUE" of $727.56.

71. Each of the accounts referenced in Exhibits E & F refer to the same medical services.

72. Between February 28, 2018, when Exhibit F was mailed, and September 18, 2018, when Exhibit E was mailed, however, the debt referenced in Exhibits C & D increased from $710.83 to $727.56.

73. Upon information and belief, each of the accounts referenced in Exhibits E & F are accruing interest at about 4.75% annually.

74. Neither Exhibit E nor Exhibit F states that the alleged debt is accruing interest, and Exhibit F does not itemize the additional interest.

75. Plaintiff was misled and confused by Exhibits E & F.

76. The unsophisticated consumer would be misled and confused by Exhibits E & F.

77. Plaintiff had to spend time and money investigating Exhibits E & F, and the consequences of any potential responses to Exhibits E & F.

### *The FDCPA*

78. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through

13

[s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

79. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

14

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

80. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

81. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt. Failure to disclose that the account was accruing interest is ambiguous as to the amount and character of the debt. *See Spuhler*, 2017 U.S. Dist. LEXIS 210895, at *19-20 (triable issue of fact as to whether the collection letter is misleading under 15 U.S.C. §§ 1692e and 1692f).

82. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

83. 15 U.S.C. § 1692g(a)(1) requires that, "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," that a debt collector provide notice of "the amount of the debt."

### *The WCA*

84. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

85. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

86. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

87. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

88. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

89. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

90. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

91. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell*

*Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

92. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

93. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

94. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.")

## COUNT I -- FDCPA

95. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

96. Count I is brought on behalf of Plaintiff Voeks.

97. By listing a "last activity date" that is prior the last payment made on the account, Exhibit A is misleading as whether such payment had been credited to the balance.

98. Defendant violated 15 U.S.C. §§ 1692e and 1692e(10).

## COUNT II -- FDCPA

99. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

100. Count II is brought on behalf of Plaintiff Voeks and in the alternative of Count I.

101. <u>Exhibit A</u> misrepresents the amount of Plaintiff Voeks alleged debt.

102. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692g(a)(1).

## COUNT III - FDCPA

103. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

104. Count III is brought on behalf of Plaintiffs Lemke and Merkovich.

105. By failing to disclose that Plaintiffs' alleged debts are subject to the accrual of interest, <u>Exhibits C-F</u> are confusing and misleading as the character, amount, and legal status of such debts.

106. The amount of the debt varies day to day, and has increased over time, due to Americollect's addition of interest, but no *Miller* safe harbor language is provided to inform the unsophisticated consumer of that fact or how to pay the correct amount.

107. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), and 1692e(10),

## COUNT IV – WCA

108. Plaintiffs incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

109. Count III is brought on behalf of each Plaintiff.

110. Defendant is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

111. Defendant violated the FDCPA.

112. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

113. Plaintiffs bring this action on behalf of two classes.

114. Class I consists of: (a) all natural persons in the State of Wisconsin (b) to whom Defendant sent a collection letter on behalf of Aurora in the form of Exhibit A, (c) seeking to collect a debt incurred for medical services, (d) between January __, 2018 and January __, 2019, inclusive, (f) that was not returned by the postal service. Plaintiff Voeks is the proposed class representative for Class I.

115. Class II consists of: (a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters by Defendant in the form of Exhibits C & D and/or Exhibits E & F to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) in which the balance stated in the letter in the form of Exhibit E and/or Exhibit F is greater than the balance stated in the letter in the form of Exhibit C and/or Exhibit E because of interest, (e) and the letters do not disclose that the account was bearing interest, where (f) the final letter sent in the series was mailed between January __, 2018 and January __, 2019, inclusive, (g) and neither letter was not returned by the postal service. Plaintiffs Lemke and Merkovich is the proposed class representative for Class II.

116. Each class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each class.

117. There are questions of law and fact common to the members of each class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits A & B-E violate the FDCPA and WCA.

118. Plaintiffs' claims are typical of the claims of the respective class members. All are based on the same factual and legal theories.

119. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

120. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

121. Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January __, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com